James Q. McDermott (SBN 192572)
jmcdermott@fcoplaw.com
Bret G. Anderson (SBN 239491)
banderson@fcoplaw.com
Brian J. Philpott (SBN 241450)
bphilpott@fcoplaw.com
FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, CA 93004
Telephone:  (805) 659-6800
Facsimile:  (805) 659-6818

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUN ZHAO,<br><br>                   Plaintiff,<br><br>        v.<br><br>BYD AMERICA CORPORATION;<br>BYD ELECTRONIC AMERICA<br>CORP.; and<br>DOES 1 through 10, inclusive,<br><br>                   Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **AIDING AND ABETTING TORTURE (Alien Tort Statute, 28 U.S.C. § 1350)**<br>2. **AIDING AND ABETTING ARBITRARY DETENTION (Alien Tort Statute, 28 U.S.C. § 1350)**<br>3. **DEFAMATION**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jun Zhao alleges the following:

## JURISDICTION AND VENUE

1.     This action arises under the Alien Tort Statute, 28 U.S.C. § 1350.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1350 and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendant BYD America Corporation because BYD America Corporation is a corporation that maintains its principal place of business in Los Angeles County, California.

3. This Court has personal jurisdiction over Defendant BYD Electronic America Corp. because BYD Electronic America Corp. is a corporation that maintains its principal place of business in Los Angeles County, California.

4. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because Defendant BYD America Corporation and Defendant BYD Electronic America Corp. both reside in Los Angeles, California, which is in the judicial district of the United States District Court for the Central District of California.

## THE PARTIES

5. Plaintiff Jun Zhao is an adult citizen of China, currently residing in Beijing City in the People's Republic of China.

6. Defendant BYD America Corporation is a corporation organized under the laws of the State of Illinois, with its principal place of business in the City of Los Angeles in Los Angeles County, California.

7. Defendant BYD Electronic America Corp. is a corporation organized under the laws of the State of Illinois, with its principal place of business in the City of Los Angeles in Los Angeles County, California.

8. Defendant BYD Electronic America Corp. and BYD America Corporation are subsidiaries of, partners with, sister corporations with, and/or joint venturers with BYD Ltd. Co., based in Shenzhen, China. Plaintiff alleges on information and belief that each of these entities was and is part of various agreements with the intent to be associated as related entities, coventurers and/or partners; they each have contributed property, financial resources, effort, skill or knowledge to the relationship; each has shared profits and losses in various ways with each other and the parties have jointly managed each of the entities in various

ways and exercised joint control and management over the enterprise. The BYD entities are collectively referred to herein as "BYD."

9. Plaintiff is currently unaware of the true names of Defendants sued herein as DOES 1-10, and therefore sues those defendants by using fictitious names. Plaintiff does not have enough information regarding the corporate identities and corporate relationships between and among the BYD Defendants and related BYD companies to ascertain the identity of the DOE defendants at this time. Plaintiff will amend this complaint to allege their true names when ascertained. Upon information and belief, the DOE defendants are responsible in some manner for the occurrences herein alleged and the injuries to Plaintiff herein alleged were proximately caused by that conduct.

## FACTUAL BACKGROUND

10. Foxconn, headquartered in Taiwan, is a large multinational corporation that manufactures electronic devices such as the iPhone®, the iPad®, the XBOX®, the PS4®, and many others. Terry Gou founded Foxconn in 1974 and currently serves as the company's Chairman and President.

11. BYD is an electronics manufacturer with a Chinese office in Shenzhen City, Guangdong province of China and is a Foxconn competitor. BYD's North America Headquarters is located in Downtown Los Angeles, with a 450,000-square-foot facility in Lancaster, California. BYD employs over 750 workers in the United States. Plaintiff alleges on information and belief that the BYD entities are publicly traded with approximately 60% of their stock owned by U.S. investors.

12. In 2006, Foxconn detected that certain Foxconn employees who had left Foxconn for jobs at BYD had transferred large quantities of computer files to BYD. At this time, Foxconn and BYD were engaged in intense commercial competition concerning the manufacture of cell phones and cell phone parts. Foxconn was staged to become the primary manufacturer of the forthcoming iPhone and believed that the improperly transferred files contained confidential, non-public information.

BYD was rapidly increasing its cell phone component manufacturing revenue.

13. In about June 2006, Foxconn sued BYD, including former BYD executives individually, in the Shenzhen Intermediate People's Court (the SIPC) in mainland China and, on information and belief, in Hong Kong. Also on information and belief, Foxconn filed a criminal complaint[1] against former BYD executives in Shenzhen's Bao'an district. Foxconn claimed that BYD had misappropriated its trade secrets by recruiting Foxconn employees for the specific purpose of gaining non-public information about Foxconn's business and with the intent to achieve a competitive advantage for BYD's growing handheld phone business segment. On information and belief, some former BYD executives were arrested and, at least in four instances, criminally convicted of trade secret theft as of April 2007.

14. In connection with the civil proceedings, Foxconn asked the SIPC to preserve electronic evidence. The Court seized several computer hard drives related to the dispute. A hearing was held on issues relating to the examination of the hard drives and both parties raised issues regarding the review and investigation process. At the parties' request, the SIPC reported the issues to the Supreme People's Court – the highest court in mainland China.

15. In about August 2007, after considering the issue, the Supreme People's Court asked the Beijing Jiuzhou Shichu Judicial Expertise Center for Intellectual Property (the "Expertise Center"), then one of the largest intellectual property expert centers in China—with the largest number of certified judicial appraisers, to conduct an appraisal of the documents in the SIPC's possession and determine whether any non-public Foxconn information was found on the BYD computers/hard drives.

16. The Expertise Center was a private entity that employed numerous engineers and was regularly hired to provide expert opinions and reports in intellectual property matters. Plaintiff was an intellectual property professional who

---

[1] Chinese custom/law allows for civilian entities (e.g. individuals and corporations) to commence criminal proceedings.

owned about 35% of the Expertise Center and was its legal representative and deputy director.

17. The Expertise Center began issuing its appraisal reports in the Foxconn v. BYD matter in about December 2007. The reports, addressing the documents one by one, concluded that many of the Foxconn files in the BYD hard drives were not common knowledge, as the prior criminal proceedings and conviction(s) had suggested.

18. In about March 2008, Foxconn withdrew its civil complaint in the SIPC and further reported BYD's trade secret thefts to the criminal authorities. On information and belief, criminal investigations resulted in the arrest of BYD's former executive director and vice president, as well as the arrest and conviction of at least four other high-level BYD employees that Foxconn had formerly employed.

19. Upon information and belief, after Foxconn took its accusations to the criminal authorities and following multiple criminal prosecutions and convictions of BYD executives, BYD wanted retribution. BYD had tremendous political power in the Longgang District of Shenzhen City because it was a major contributor to the local economy and because its founder and controlling interest owner, Wang Chuanfu, was one of the members of the standing committee to the Shenzhen People's Congress.

20. Upon information and belief, taking advantage of its political power and influence, the Defendants concocted a scheme to send one of its officers/employees, Wei Qun E, who was and is an American lawyer and citizen, to make a false report to the Chinese police in Longgang, where BYD's political power and influence was the greatest. Wei Qun E. did so representing herself as the General Manager of BYD's International Legal Department. The false report intentionally implicated both Foxconn and Plaintiff. This occurred at a time of increasing competition in the mobile-phone manufacturing industry as the next generation iPhone 3G was to be introduced in more than 20 countries. This also occurred at a time when, on

information and belief, BYD was attempting to bury or avoid altogether any press or issues that could thwart an anticipated investment by Warren Buffett's Berkshire Hathaway in excess of $200,000,000.[2] On information and belief, the Defendants, in concert with other international BYD entities, took the above actions in an effort to positively impact its economic position in the industry and in global equity markets.

21.     Central to this scheme, in May 2008, Wei Qun E traveled from California to China and told the police in Shenzhen City that she was there on behalf of her company (the Defendants) to report a case of suspected fabrication of evidence.  She stated that her company suspected that Foxconn had instructed the Expertise Center (Plaintiff) to alter the original files held by the court, that the Expertise Center did so and then produced an appraisal report based on altered files.

22.     In her police statement, Wei Qun E also accused the Expertise Center and Foxconn of a "group crime" causing BYD to suffer an approximate loss of HKD $5 billion (more than USD $640,000,000 at the time of this filing).

23.     Upon information and belief, Wei Qun E and the Defendants knew the statements that Wei Qun E made to the Shenzhen police were false because the SIPC had already investigated issues relating to a concern BYD had raised over differences between the data contained on court files and the Expertise Center's files and had already concluded that the Expertise Center had done nothing wrong. Further, on information and belief, public statements by court officials had already been made at that time indicating that there was nothing problematic about the Expertise Center's work.

24.     Upon information and belief, as a result of the false statements that the Defendants, through Wei Qun E, made to the Longgang District police, the police traveled approximately 1,200 miles by car and plane to Beijing City to detain

---

[2] The Fortune website reports that "On Sept. 26, 2008, Berkshire Hathaway Inc. (BRK-B) agreed to buy what is now equivalent to 24.59% of BYD Co.'s Hong Kong-traded stock. Those shares... have soared more than 500% since then, turning a $232 million investment into a stake worth roughly $1.6 billion at current prices." (https://fortune.com/2018/09/26/warren-buffett-berkshire-hathaway-byd-china-electric-cars/) (last visited 1/30/2020.)

Plaintiff on August 28, 2008 with a same day return to Longgang by car and plane. On information and belief, the process of this arrest occurred against jurisdictional norms and boundaries thereby depriving Plaintiff of fundamental fairness and due process, subjecting him instead to an arbitrary and extra-territorial arrest, without authority.

25. Without checking into the detention center identified on the detention notice, Plaintiff was initially detained at a building identified only as a "Police dog training base" in the Shenzhen suburbs. He was placed outside in a dilapidated holding area beside a dirty and bug-infested pond, hand-cuffed to a large wooden chair. The police left him alone, outside, directly exposed to the sun for many hours. Plaintiff sustained severe sun burn and bug bites and was withheld all food and water but for a few bites of food and a half bottle of water a day. Officers alternated these conditions with indoor interrogation and beating sessions lasting several hours at a time. During these sessions, Plaintiff remained hand-cuffed to the heavy wooden chair and was forced to lift and carry it upstairs, which caused severe bruising and pain. When the interrogators became tired, Plaintiff would be forced to return to the outdoor holding area, all while handcuffed to the heavy wooden chair. Plaintiff experienced suicidal thoughts and would have acted on those thoughts, but was physically unable to do so.

26. After spending approximately 48 hours in the "Police dog training base," Plaintiff was transported and jailed in a different detention center (i.e., different than the one named on his detention notice) in Shenzhen until being transferred to prison.

27. While detained from September 2008 to mid-2010, as with the initial detention in August 2008, Plaintiff was beaten repeatedly. He shared cells with criminals awaiting death penalty execution who were extremely violent and unstable. He was forced to stand in pouring rain or burning sun for extended periods of time. He was forced to remain awake and to perform hard labor between the hours of 10

p.m. and 6 a.m.  For the scant respite he was allowed, guards forced him to sleep on the floor.  When he tried to write letters to family, officers tore them in front of him and took additional steps to completely prevent him from contacting his family.  Plaintiff was beaten by other inmates under the permission of officers, and forced to finance another inmate's prison spending account.  Plaintiff had pre-existing diabetic and heart issues and was denied access to basic medication and medical treatment for over a year, ultimately causing emergency hospitalization.

28. On one occasion, Plaintiff was temporarily returned to the "Police dog training base" in the Shenzhen suburbs for additional "interrogation" in late September or early October 2008.

29. On two other occasions during this detention (in October 2008), Plaintiff was temporarily transferred to a police investigation station for multiple day/night interrogation sessions, with some non-stop interrogation sessions lasting as long as 3 days  During these interrogations, he was hand-cuffed to a metal chair, was not allowed to sleep, was beaten day and night, was given only a few bites of food and drops of water, and his chair was placed directly under an air conditioning vent that constantly blew frigid air on him. The interrogations were intended to cruelly coerce Plaintiff into a false confession of wrongdoing, including for matters unrelated to the crime specified in his detention notice.  He was told that his detention and interrogation were "the boss's command."

30. At another time during his detention, in an effort to manipulate and coerce Plaintiff, Shenzhen City Police officer Lin threatened Plaintiff with false accusations and represented that the officer could kill Plaintiff without repercussion. In his weakened and tortured state, these actions greatly tormented Plaintiff and caused Plaintiff significant psychological and physical harm.

31. The officers also concealed Plaintiff's identify and location from Plaintiff's family.  The original detention notice was served only on his employer and gave a false detention location.  Plaintiff was also held under a fake name in his

actual detention location. Plaintiff was led to believe that he could disappear without a trace.

32. Due to being detained under a fake name and false location, Plaintiff's family was initially unable to locate Plaintiff and timely engage counsel. After Plaintiff's first meeting with his engaged attorney in March 2009, his attorney was threatened by officers and had to resign from representation. Plaintiff was thereafter unable to engage a new attorney until a few days before the first court hearing in September 2009.

33. Plaintiff was ultimately convicted of "taking bribes as non-state staff" and sentenced to 14 years in prison.

34. In prison, the abusive conditions continued. Plaintiff was forced to share a prison cell with highly violent criminals such as drug dealers and mentally unstable inmates, leading to substantial physical and mental abuse by fellow inmates and officers. From 2010 to 2013, the main food provided was molded rice. He was forced to pack 7,000 bags of Chinese herbal medicine per day, without any safety measures in place to protect against harmful conditions.

35. Plaintiff was released from prison on parole on February 9, 2018 after spending nearly 10 years in prison under these conditions.

36. During Plaintiff's detention and imprisonment, the harsh conditions, and the unjust and corrupt Chinese criminal justice system prevented him from pursuing the legal claims he is now pursuing in this complaint. On information and belief, by Chinese rule, Plaintiff could not challenge his conviction while in prison without threat of or actual physical harm and other repercussions. After many years of abuse and mistreatment, Plaintiff also believed that if he challenged anything about his conviction or his detention, the abuse he was suffering at the hands of the authorities and his sentence would increase. Officers prevented him from accessing legal counsel and his case documents. Plaintiff was only able to obtain and gather his case documents after his release. Plaintiff was unable to obtain a copy of Wei

Qun E's statement to the Shenzhen police until May or June 2019.

37. The above actions, upon information and belief were intentionally and/or knowingly instigated by the Defendants and caused Plaintiff significant personal, mental, physical, emotional, reputational, and economic damage in a total amount and manner that will be proven at trial. Prior to his arrest Plaintiff was an esteemed expert witness, the deputy chair of the Beijing IP research Committee, a contributor to national youth invention programs, a regular speaker on current intellectual property matters, and regularly relied on by the Chinese Supreme Court and legislative bodies. He held "judicial appraiser" and "patent agent" certificates. These titles were stripped from him following his arrest and conviction.

38. The Expertise Center was forced to cease business after Mr. Zhao's detention, causing Mr. Zhao to incur losses exceeding $2,000,000 dollars, and in such amounts as will be fully proven at trial. Mr. Zhao held a similarly significant ownership and executive position at another entity at the time of his incarceration. The incarceration caused many projects and clients to instantly disqualify Mr. Zhao and his company from pitching and obtaining official projects. This caused Mr. Zhao additional losses estimated to be in the millions of dollars.

39. As described above, the torture and abuse Plaintiff suffered impacted his physical, mental, and emotional health. Prior to his detention in 2008, Plaintiff was 5 feet 8 inches tall, weighed about 190 pounds, and was in otherwise great mental and physical condition, other than having had heart stent surgery in August 2008. Due to the severe conditions and torture in the detention centers and prison, Plaintiff's health deteriorated such that he was sent to emergency treatment centers three times in 2012 alone, and hospitalized once. After suffering nearly 10 years of torture and imprisonment, upon his release in 2018, Plaintiff was only 5 feet 7 inches tall, had lost almost 50 pounds, and suffered constantly from depression, anxiety, and hallucinations. In addition, his father died while he was imprisoned, and Mr. Zhao missed nearly a decade of his son's life, who was 12 at the time Mr. Zhao was

incarcerated.

40. BYD's conduct violated established international law and the law of nations regarding torture and arbitrary detentions including, but not limited to, the Universal Declaration of Human Rights[3]; the International Covenant on Civil and Political Rights[4]; the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment[5]; the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment[6]; and The Restatement (Third) of the Foreign Relations of Law of the United States, Section 702.[7]

41. Plaintiff is pursuing all avenues of appeal of his criminal conviction in China.

## FIRST CLAIM FOR RELIEF

### (Aiding and Abetting Torture in violation of the Alien Tort Statute)

### (against all Defendants, including DOES 1-10)

42. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41 above.

43. During his detention in two different locations in Shenzhen City, Plaintiff was tortured by Chinese authorities on multiple occasions under the color of official Chinese authority.

44. The conduct that Plaintiff suffered meets the definition of torture found in the Torture Victim Protection Act of 1991, as well as the law of nations and customary international law as referenced above.

45. Plaintiff was harmed and damaged as a direct and proximate result of the torture he suffered.

46. Upon information and belief, Defendants aided and abetted Plaintiff's

---

[3] https://www.un.org/en/universal-declaration-human-rights/
[4] https://www.ohchr.org/en/professionalinterest/pages/ccpr.aspx
[5] https://www.ohchr.org/en/professionalinterest/pages/cat.aspx
[6] https://www.ohchr.org/EN/ProfessionalInterest/Pages/DeclarationTorture.aspx
[7] Restatement (Third) of Foreign Relations Law § 702 (1987).

torture through actions in California by, among other things, preparing documents for presentation to Chinese authorities in Shenzhen, deliberating regarding the action to be taken in China to harm the Expertise Center and Plaintiff, directing their California employee, Wei Qun E, to travel to China to make false allegations against Plaintiff to the police in Shenzhen City, and financing the travel necessary for Wei Qun E to travel from California to China to make the false report. Upon information and belief, Defendants knew and understood that reporting Plaintiff to the police in Shenzhen City, where BYD had political power over local officials, would result in Plaintiff being beaten and tortured for the purpose of coercing confessions and finding criminal charges that could be brought against Plaintiff.

47. Upon information and belief, to the extent that Defendants can be said to have acted indirectly, Defendants are vicariously liable for the actions of their agents, employees, co-venturers, and/or partners. Upon information and belief, those agents, employees, co-venturers, and/or partners were acting within the course and scope of such agency, enterprise, or venture, and their conduct was confirmed and ratified by Defendants.

48. Upon information and belief, Defendant's actions were willful and malicious and in conscious disregard of Plaintiff's rights in that Defendants: knew that the allegations it directed to be reported to the Chinese police were false, knew that Plaintiff would be beaten and abused, yet whereas only interested in gaining a commercial and litigation advantage over its competitor, Foxconn, by whatever means possible.

## SECOND CLAIM FOR RELIEF
**(Aiding and Abetting Arbitrary Detention in violation of the Alien Tort Statute)**
**(against all Defendants, including DOES 1-10)**

49. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48 above.

50. Plaintiff was arbitrarily detained by Chinese authorities on August 28,

2008 for approximately 48 hours without proper process.  He was held at an undisclosed location: a location different than the location stated on his detention notice.  He was held under a false name.  He was shackled to a heavy wooden chair and beaten.

51.    Plaintiff was arbitrarily detained without proper process for an additional 9 months before charges were filed.  He was effectively denied access to counsel for months.  He was beaten and abused.  Plaintiff was not charged with the allegations on which he was initially detained.

52.    The conduct that Plaintiff suffered meets the definition of arbitrary detention in the Restatement (Third) of the Foreign Relations Law of the United States, section 702, as well as the law of nations and customary international law.

53.    Plaintiff was harmed and damaged as a direct and proximate result of the arbitrary detention he suffered.

54.    Upon information and belief, Defendants aided and abetted Plaintiff's arbitrary detention through actions in California by, among other things, preparing documents for presentation to Chinese authorities in Shenzhen, deliberating regarding the action to be taken in China to harm the Expertise Center and Plaintiff, directing their California employee, Wei Qun E, to travel to China to make false allegations against Plaintiff to the police in Shenzhen City, and financing the travel necessary for Wei Qun E to travel from California to China to make the false report.  Upon information and belief, Defendants knew and understood that reporting Plaintiff to the police in Shenzhen City, where BYD had political power over local officials, would result in Plaintiff being arbitrarily detained and abused for the purpose of coercing confessions and finding criminal charges that could be brought against Plaintiff.

55.    Upon information and belief, to the extent that Defendants can be said to have acted indirectly, Defendants are vicariously liable for the actions of their agents, employees, co-venturers, and/or partners.  Upon information and belief, those

FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road, Ventura, California 93004 | 4550 E. Thousand Oaks Blvd, Ste 250, Westlake Village, California 91362

agents, employees, co-venturers, and/or partners were acting within the course and scope of such agency, enterprise, or venture, and their conduct was confirmed and ratified by Defendants.

56. Upon information and belief, Defendant's actions were willful and malicious and in conscious disregard of Plaintiff's rights in that Defendants knew that the allegations it directed to be reported to the Chinese police were false, knew that Plaintiff would be arbitrarily detained and abused, yet were only interested in gaining a commercial and litigation advantage over its competitor, Foxconn, by whatever means possible.

## THIRD CLAIM FOR RELIEF

### (Defamation – Slander Per Se)

### (against all Defendants, including DOES 1-10)

57. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 56 above.

58. Defendants, through their agent Wei Qun E, made false statements of fact about Plaintiff to the police in Shenzhen City, China.

59. The false statements included statements that Plaintiff had committed crimes involving the fabrication or destruction of evidence.

60. Plaintiff was harmed and damaged as a direct and proximate result of the false and defamatory statements by Defendants.

61. Upon information and belief, Defendants made the false and defamatory statements about Plaintiff in bad faith and with malice. Upon information and belief, Defendants knew that the statements made to the Shenzhen police were false. Upon information and belief, Defendants, by defaming Plaintiff, were trying to create a scandal for its business competitor, Foxconn, and thereby gain a business and litigation advantage over Foxconn.

62. Upon information and belief, to the extent that Defendants can be said to have acted indirectly, Defendants are vicariously liable for the actions of their

agents, employees, co-venturers, and/or partners. Upon information and belief, those agents, employees, co-venturers, and/or partners were acting within the course and scope of such agency, enterprise, or venture, and their conduct was confirmed and ratified by Defendants.

63. On information and belief, unlike proceedings in the United States, criminal proceedings in China are not governed by adequate procedural safeguards.

## FOURTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

### (against all Defendants, including DOES 1-10)

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 63 above.

65. Defendants' conduct, through their agent Wei Qun E, in making knowingly false statements about Plaintiff having committed criminal offenses to the police in China, was extreme and outrageous and directed at Plaintiff with the intent of causing emotional distress or, at the very least, with reckless disregard of the probability of causing Plaintiff emotional distress.

66. Plaintiff was the appointed expert witness for litigation pending between BYD and Foxconn and Defendants knew that its' actions would directly impact Plaintiff because of his appearance in and involvement in the proceedings. Further, Defendants' extensive relationships with local government authorities gave Defendants power to affect Plaintiff's interests.

67. On information and believe, given their political connections, Defendants knew that torture and immediate and arbitrary detention were likely to occur as a result of reporting these allegations of criminal conduct to local authorities.

68. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered severe emotional distress. Defendants' actions would cause any average member of the community to react in outrage and any reasonable person

learning of such actions taken against them would suffer significant mental distress.

69. Upon information and belief, Defendants made the false and defamatory statements about Plaintiff in bad faith and with malice. Upon information and belief, Defendants knew that the statements made to the Shenzhen police were false.

70. Upon information and belief, to the extent that Defendants can be said to have acted indirectly, Defendants are vicariously liable for the actions of their agents, employees, co-venturers, and/or partners. Upon information and belief, those agents, employees, co-venturers, and/or partners were acting within the course and scope of such agency, enterprise, or venture, and their conduct was confirmed and ratified by Defendants.

71. On information and belief, unlike proceedings in the United States, criminal proceedings in China are not governed by adequate procedural safeguards.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For an award of compensatory and punitive damages, the exact amount to be ascertained.

2. For interest;

3. For Plaintiff's costs in this lawsuit;

4. For Plaintiff's reasonable attorneys' fees; and

5. Such other relief as the Court may deem just and proper.

Dated: February 7 , 2020        FERGUSON CASE ORR PATERSON LLP

/s/
By: _____

BRET G. ANDERSON
Attorneys for Plaintiff JUN ZHAO

16
COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff Jun Zhao hereby demands trial by jury.

Dated: February 7 , 2020     FERGUSON CASE ORR PATERSON LLP

By: /s/ _____
    BRET G. ANDERSON
    Attorneys for Plaintiff JUN ZHAO